UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES BYRON,

    Plaintiff,

v.

INSTITUTE FOR ENVIRONMENTAL HEALTH, INC.,

    Defendant.

Case No. C18-1415RSL

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on defendant Institute for Environmental Health, Inc.'s ("IEH") motion for summary judgment. Dkt. #30. Summary judgment is appropriate where, taking the facts in the light most favorable to the nonmoving party, there is no dispute of material fact that would preclude judgment as a matter of law. The moving party "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That party must also cite "to particular parts of materials in the record that show the absence of a genuine issue of material fact." Fed. R. Civ. P. 56(c). That party is entitled to summary judgment if the non-moving party fails to identify "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 1

favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). Summary judgment should be granted where the nonmoving party has failed to offer evidence from which a reasonable jury could return a verdict in its favor. *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the parties' memoranda, declarations, and exhibits,[1] and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

IEH is a private company that provides, *inter alia*, laboratory testing services for the food industry. Dkt. #30 at 1. Plaintiff James Byron worked for IEH as a salesman from February 2010 until his employment was terminated in October 2011. Dkt. #43 at 2. In August 2011, Mr. Byron told his supervisor, Dr. Mansour Samadpour, that he thought a particular client would prefer that IEH test three sets of twenty-five samples of their product, significantly more than the number that had been proposed by IEH scientists. Dkt. #60-4. Dr. Samadpour replied that Mr. Byron's suggestion was inconsistent with industry guidelines. *Id*. Shortly thereafter, Dr. Samadpour terminated Mr. Byron's employment.

Mr. Byron filed an administrative action with the Occupational Safety and Health Administration ("OSHA") alleging that his termination was in retaliation for Mr. Byron's

---

[1] The Court has not considered objectionable materials discussed at the end of this Order.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 2

expressed concern that some of IEH's food sample testing procedures relied on an insufficient number of samples. *See* Dkt. #47-1. The OSHA complaint invoked the whistleblower provision of the federal Food Safety Modernization Act ("FSMA"), which generally protects employees in the food and drug industries from retaliation for opposing conduct they reasonably believe violates the Food, Drug, and Cosmetic Act ("FDCA"). *Id*. The FDCA regulates food and drug processing, production, and testing. *See* 9 U.S.C. §341 *et seq*.

In the administrative proceeding, the Administrative Law Judge ("ALJ") granted IEH's motion to dismiss Mr. Byron's complaint on the ground that FSMA's whistleblower protections did not cover IEH employees. *Id*. at 3; Dkt. #47-3 at 1. Mr. Byron appealed, and the Administrative Review Board reversed and remanded, finding that IEH is subject to FSMA. Dkt. #47-1 at 11. IEH then requested that the ALJ dismiss Mr. Byron's claim because (a) his communications did not qualify as protected activity and (b) IEH would have dismissed Mr. Byron even in the absence of his communications for other, legitimate reasons. Dkt. #47-3 at 3. The ALJ denied the motion, identifying continuing disputes of material fact with respect to whether or not Mr. Byron engaged in protected activity and whether or not IEH would have fired Mr. Byron regardless of any protected activity. *Id*. at 12.

Mr. Byron filed this action seeking *de novo* review of his FSMA claim. *See* Dkt. #1. Mr. Byron again alleges that IEH unlawfully terminated his employment in retaliation for expressing his concerns about IEH's testing process in violation of § 402 of FSMA. Dkt. #1 at ¶¶ 46-47, 72-89. IEH seeks dismissal of the claim on the ground that plaintiff's communications about his concerns were not protected activity. Dkt. #30 at 8. In its reply memorandum, IEH raises a number of evidentiary objections to a declaration Mr. Byron

submitted when opposing the motion for summary judgment. Dk. #53 at 12-13.

## DISCUSSION

**A. Retaliation under FSMA.**

Mr. Byron argues that his reports to IEH regarding the insufficiency of IEH's testing procedures constituted protected activity under FSMA. Dkt. #1 at ¶¶ 73-89. FSMA's employee protection provision provides, in relevant part, that,

> "No entity engaged in the . . . processing . . . of food may discharge an employee . . . because [he] provided . . . to the employer . . . information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of any provision of [the FDCA] or any order, rule, regulation, standard, or ban under [the FDCA]. . . ."

21 U.S.C. § 399d(a). FSMA specifically protects employees who give information to their employer about conduct they "reasonably believe" violates the FDCA. 21 U.S.C. §399d(a)(1). The implementing regulations for FSMA's whistleblower protections also adopt the "reasonable belief" standard. 29 C.F.R. § 1987.102(b). There are few cases in which the anti-retaliation provision of FSMA has been interpreted and applied, but the consensus is that the whistleblower provision extends to employees who report or oppose what they reasonably believe to be unlawful conduct, even if the conduct is not, in fact, unlawful. *See Singletary v. Howard Univ.*, 939 F.3d 287, 296 and n.2 (D.C. Cir. 2019); *Ortiz v. Priority Healthcare Group LLC*, 2019 WL 3240016, at *7 (M.D. Pa. July 18, 2019); *Chase v. Brothers Int'l. Food Corp.*, 3 F. Supp.3d 49, 54 (W.D.N.Y. 2014). The ALJ in the underlying administrative action similarly concluded that FSMA's anti-retaliation provision applies where the employee has a reasonable belief that the employer's conduct violated relevant law. Dkt. #47-3 at 6.

Having reviewed FSMA's statutory language and the standards for stating a claim

of retaliation against employers in other areas of federal law, the Court adopts the Ninth Circuit's formulation of a *prima face* case of retaliation under the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A. Pursuant to that formulation, plaintiff must show that: "(1) he engaged in protected activity or conduct; (2) his employer knew . . . that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the circumstances were sufficient to raise an inference that the protected activity was a contributing factor in the unfavorable action." *Tides v. The Boeing Co.*, 644 F.3d 809, 814 (9th Cir. 2011).[2] Although an employee need not prove that the employer's conduct was, in fact, unlawful in order to satisfy the protected activity element of the *prima facie* case, he must show that his belief that the employer acted unlawfully was reasonable. *See Rocheleau v. Microsemi Corp., Inc.,* 680 F. App'x 533 (9th Cir. 2017) (employee not entitled to whistleblower protections where her belief that employer's conduct was unlawful was unreasonable). *See also Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268 (2001) (employee's complaint of harassment was not protected activity because no reasonable person could have believed that a single sexualized joke was unlawful discrimination).

**1. The twofold "reasonable belief" standard.**

Establishing that an employee had a "reasonable belief" that he or she was opposing unlawful conduct involves a twofold showing. First, the employee must show

---

[2] This standard is very similar to that adopted by the District Court for the Middle District of Pennsylvania in *Chase:*

> ". . . to state a claim for retaliation under the FSMA, a plaintiff must establish (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff or action that would dissuade a reasonable worker from exercising protected rights under the FSMA, and (3) a causal connection between the protected activity and adverse action."

3 F. Supp.3d at 54.

that he subjectively believed that the employer's conduct was unlawful at the time. Second, the employee's subjective belief must have been objectively reasonable. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1000-1001 (9th Cir. 2009) (SOX); *Rochelau*, 680 F. App'x at 535 (SOX); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. at 271 (employment discrimination).

### a. Subjective Belief

IEH argues that, because Mr. Byron did not communicate to anyone at IEH that he believed its conduct violated the FDCA, he did not have a subjective belief that he was opposing unlawful (as opposed to merely suboptimal) conduct at the time. *Id.* at 20-23. Mr. Byron acknowledges that he did not communicate his belief that IEH was violating the FDCA. Nevertheless, he asserts that he believed IEH "was violating the law and/or conducting itself in a manner that presented food safety risks." Dkt. #43 at ¶24. He argues that his experience in the industry, his familiarity with the FDCA, and the liabilities associated with defective food products led him to the reasonable conclusion that IEH had an obligation to the public to use sample sizes that would guarantee trustworthy results and that the FDCA regulated these procedures. *Id.* at ¶¶ 33-36. An employee's testimony that he suspected the conduct complained of violated the law at the time is evidence of his subjective belief and is generally sufficient to raise a genuine issue of fact regarding that element of the claim. *See Van Asdale*, 577 F.3d at 1002 (concluding that plaintiff's testimony regarding her subjective "belief that an investigation [into shareholder fraud] needed to occur" was sufficient to reverse summary judgment in the employer's favor).

### b. Objective Belief

IEH points out that there are no specific sample size requirements for food testing in the FDCA and therefore argues that Mr. Byron's asserted belief that IEH's testing

protocols were unlawful was objectively unreasonable. Dkt. #30 at 18. "[A]n employee need not cite a code section he believes was violated to trigger [whistleblower] protections," however. *Van Asdale*, 577 F.3d at 997 (citing *Welch v. Chao*, 536 F.3d 269, 274 (4th Cir. 2008)) (internal quotations omitted). "An erroneous belief that an employer engaged in an unlawful employment practice is *reasonable*, and thus actionable . . . if premised on a mistake made in good faith." *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994) (emphasis in original). A belief is objectively reasonable when "a reasonable person with the same training and experience as the employee would believe that the conduct implicated" violates the law. *Wiest v. Lynch*, 710 F.3d 121, 132 (3d Cir. 2013) (citing *Sylvester v. Paraexel Int'l LLC,* ARB 07-123, 2011 WL 2165854 at *11 (Dep't of Labor May 25, 2011) (en banc)).

Mr. Byron was hired as a salesman with food industry experience, but is neither a scientist nor a regulatory expert. *See* Dkt. #30 at 4, 7; Dkt. #47 at 7-9. Mr. Byron was aware that other IEH employees with scientific training, such as Dr. Jaspreet Sidhu, had expressed their own concerns about IEH's testing procedures. *Id*. at at 11-12.[3] Mr. Byron also suggests that his discussions with other scientists employed by IEH regarding their concerns about IEH's procedures show that his belief was reasonable. *Id*. at ¶28. As discussed above, a mistaken belief that the activity was unlawful is still protected activity if the belief were in good faith and reasonable under the circumstances. *Moyo*, 40 F.3d at

---

[3] IEH asserts that Dr. Sidhu's testimony "directly refuted" Mr. Byron's account of his conversation with Dr. Sidhu. Dkt. #53 at 13. However, in his deposition, Dr. Sidhu said he did not recall the conversation with Mr. Byron but explained that he was not asserting that the conversation never took place. Dkt. #53-1 at 6. While Dr. Sidhu's testimony certainly does not resolve the issue in Mr. Byron's favor, neither does it "directly refute" Mr. Byron's account of events, as IEH insists. At best, the content of Dr. Sidhu's conversations with Mr. Byron is disputed.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 7

984. IEH has not offered evidence that Mr. Byron's mistaken belief was in bad faith.

## 2. *Prima Facie* Case

A plaintiff's burden of proof at the *prima facie* stage is minimal. *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 660 (9th Cir. 2002). Taking the facts in the light most favorable to Mr. Byron, the non-moving party, there is a genuine issue of fact as to whether Mr. Byron's communications with his former employer were protected activity for the purposes of FSMA's whistleblower protections. There is ample evidence that the employer was aware of plaintiff's opposition and that plaintiff suffered an unfavorable personnel action, satisfying the second and third elements of a *prima facie* case. Finally, the temporal proximity between Mr. Byron's alleged protected activity and his termination was sufficiently close to support an inference of retaliation at this stage of the proceeding. *Dawson v. Entek Int'l.*, 630 F.3d 928, 937 (9th Cir. 2011).

## B. IEH's Evidentiary Objections

IEH moved to strike portions of Mr. Byron's declaration submitted in support of his opposition to IEH's motion for summary judgment ("Byron Declaration" or "Byron Decl."). *See* Dkt. #53 at 12-13. IEH argues that Mr. Byron's description of his qualifications as a food industry salesperson "purports to be an expert opinion." *Id*. IEH argues that, since plaintiff has not identified himself as an expert, he cannot offer his opinions to "create a sham issue of fact." *Id.* A party cannot use a declaration that contradicts the record to manufacture an issue of fact. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). There is no indication that Mr. Byron is attempting to do that here, however. Mr. Byron's description of his industry experience is in response to IEH's description of his qualifications. *See* Dkt. #30 at 4. Moreover, his experience is relevant to his whistleblower claim, which requires that he

demonstrate that his belief was objectively reasonable for someone with his training and experience. *Weist*, 710 F.3d at 132. Therefore, his statement beginning, "[a]s someone in the food industry . . ." describes his subjective belief based on his training and does not purport to offer an expert opinion. Byron Decl. at ¶36. IEH's motion to strike that portion of ¶36 of the Byron Declaration is denied.

IEH also argues that Mr. Byron's declaration contains statements that are conclusory, unsupported, or that contradict the record. The Court evaluates each of these arguments in turn. IEH first contends that Mr. Byron's assertion that Dr. Samadpour had never expressed concerns about Mr. Byron's performance to him is contradicted by Exhibits M, R, S, and T to the Bouchard Declaration. However, those exhibits are emails from Mr. Byron to Dr. Samadpour, and none of them contains any expression of disapproval by Dr. Samadpour's of Mr. Byron's performance. The motion to strike ¶15 of the Byron Declaration is denied.

Second, IEH suggests Mr. Byron's account of his conversation with Dr. Sidhu is "directly refuted" by Dr. Sidhu's testimony. Dkt. #53 at 13. As discussed in footnote 4, however, Dr. Sidhu testified that he did not recall the conversation and has not refuted Mr. Byron's account. Even if Dr. Sidhu's testimony did conflict with Mr. Byron's, a conflict in witnesses' testimony is not grounds to strike. IEH's motion to strike ¶18 of the Byron Declaration is therefore denied.

Third, IEH seeks to strike Mr. Byron's description of his conversation with Mr. Van Arsdale on the ground that it is an unsupported, "conclusory statement based on inadmissible hearsay." *Id*. Mr. Byron's conversation with Mr. Van Arsdale is not hearsay because it is not offered for its truth, but instead for its effect on the listener. *U.S. v. Connelly*, 395 F. App'x 407, 408 (9th Cir. 2010). Mr. Byron does not include his

conversation with Mr. Van Arsdale to prove the validity of Mr. Van Arsdale's concerns, but rather to explain the events that informed his beliefs about IEH's alleged unlawful activity. Mr. Byron does not, however, offer any factual support for his conclusions about Mr. Van Arsdale's motives in not reporting his concerns. Byron Decl. at ¶20. While a witness may communicate his or her inferences about others' reactions or emotions based on surrounding facts, this conclusory statement about Mr. Van Arsdale's motivations is offered without any factual basis that could support such an inference. The Court grants IEH's motion to strike the following sentence from Mr. Byron's Declaration: "Yet is was clear to me that Mr. VanArsdale [sic] was unwilling to risk Dr. Samadpour's wrath by sharing his concerns." *Id*.

Fourth, IEH takes issue with Mr. Byron's characterization of Dr. Samadpour's performance of the sample testing as "a clear conflict of interest that compromises any scientific intent . . . ." *Id*. at ¶28; Dkt. #53 at 13. IEH argues that this is conclusory and that it purports to be an expert opinion. *Id*. Because Mr. Byron presents this statement as objective truth unsupported by facts or expert testimony, the motion to strike the following phrase "a clear conflict of interest that compromises any scientific intent of unbiased, impartial, objective, competent review of the study results" is granted. Byron Decl. At ¶28.

Finally, IEH moves to strike Mr. Byron's testimony indicating that he had researched legal doctrines in response to IEH's lawyer's questions because it contradicts earlier testimony that his lawyer asked him to do the same research. Dkt. #53 at 13. Mr. Byron does not mention instructions from his attorney to research legal doctrines in his declaration, but this omission is not a contradiction. There is nothing inconsistent with doing research in response to requests from both his and IEH's attorneys. That he omitted

one of those requests in his declaration does not make other testimony inadmissible where there is no inherent conflict. The motion to strike ¶33 of the Byron Declaration is denied.

## CONCLUSION

Defendant IEH's motion for summary judgment is denied. There remain disputed issues of material fact regarding whether plaintiff's complaints were protected activity under the Food Safety Modernization Act. Defendant IEH's motion to strike portions of Mr. Byron's Declaration is granted in part and denied in part.

Dated this 19th day of December, 2019.

*MRS Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 11